# In the United States Court of Federal Claims

No. 25-1150
Filed: July 30, 2026

**HOWARD YOUNG,**

***Plaintiff,***

**v.**

**THE UNITED STATES,**

***Defendant.***

*Howard Young*, San Jose, CA, Pro Se Plaintiff.

*Daniel A. Hoffman*, Trial Attorney, Commercial Litigation Branch, with *Eric P. Burskin*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Assistant Attorney General, U.S. Department of Justice, Washington, D.C., and *Robert R. Rodriguez*, MAJ, JA, Litigation Attorney, Military Personnel Branch, Litigation Division, Fort Belvoir, VA, Of Counsel, for Defendant.

**MEMORANDUM OPINION AND ORDER**

**TAPP, Judge.**

Plaintiff, Howard Young ("Mr. Young"), initiated this military pay dispute seeking compensation and certain ancillary benefits dating back to his 1981 discharge.[1] (*See* Compl. at 1–2, ECF No. 1). Mr. Young and the United States move for judgment on the remaining compensation claims: namely, for wrongful discharge, disability retirement, and collateral equitable relief. (*See* Pl.'s Mot. for J. Admin. R. ("Pl.'s MJAR"), ECF No. 31; Def.'s Cross-Mot. for J. Admin. R. ("Def.'s xMJAR"), ECF No. 32). The Court must determine whether the statute of limitations bars some claims and whether the Army Board for Correction of Military Records's ("BCMR") denial of Mr. Young's disability pay was legally sound under the "substantial evidence" standard and not arbitrary and capricious. (*See id.*; Pl.'s Resp. to Def.'s Mot. J. Admin. R. ("Pl.'s Resp.") at 2–3, ECF No. 33). For the reasons stated below, the United States' Motion for Judgment is **GRANTED**.

[1] Because the Court's jurisdiction extends only to claims for pay rather than for benefits, Mr. Young's benefit claims were previously dismissed. (Partial Dism. Order at 4, ECF No. 29).

## I. Background[2]

In February 1980, seventeen-year-old Mr. Young began serving as a radio operator in the United States Army. (*See* Admin. R. ("AR") at 91, 96, ECF No. 30-1). As part of his enlistment process, a medical examiner assessed Mr. Young's physical condition and determined that he met high fitness standards in all areas except for moderate flat feet, which warranted minor activity restrictions involving his lower extremities. (*Id.* at 8). In all other aspects, he was found fit for duty. (*Id.*) After three months of service, Mr. Young was arrested and subsequently convicted of misdemeanor theft involving a gold chain. (*See id.* at 12, 16). In the following months, Mr. Young received multiple counseling sessions regarding his negative attitude, neglect of duty, shoplifting, and fighting. (*Id.* at 3). The Army ultimately discharged Mr. Young on November 20, 1980, under Other Than Honorable conditions due to his criminal conviction and history of misconduct. (*Id.* at 3). Mr. Young was a minor during the entirety of his service. (Compl. at 2). In total, Mr. Young was credited with eight months and twenty-seven days of active service. (AR 10).

During the discharge process and after being advised of his rights, Mr. Young waived the opportunity to appear before a board of officers, declined a separation physical, and did not submit statements on his own behalf. (AR 4, 84). On September 3, 1981, the United States Department of Veterans Affairs ("VA") denied Mr. Young access to military benefits and compensation due to his service and the nature of his discharge. (Pl.'s Supp. Docs. Ex. A, ECF No. 7-1). Mr. Young sought an upgrade of his discharge fifteen years after his discharge from the Army; however, the Army Discharge Review Board denied his request on February 29, 1996. (*See* AR 4).

Approximately twenty-six years later, Mr. Young once again filed claims with the VA seeking benefits both prospectively and retroactively to 1981. (*See* Compl. at 2; Pl.'s Mot. for Summ. J. Exs. A, B, ECF Nos. 10-1, 10-2). In 2024, the VA recognized Mr. Young's claim for post-traumatic stress disorder ("PTSD") and accordingly found him eligible for veterans' benefits such as disability compensation. (AR 27). On June 6, 2025, the VA granted Mr. Young veterans' benefits but only awarded one year of back pay. (Compl. at 1).

During the pendency of the current litigation, the BCMR denied Mr. Young's military pay claims. (*See* AR 6). In his petition, Mr. Young requested to have his pre-service childhood meningitis, PTSD, mental health, and myasthenia gravis recognized since none were evaluated at the time of his discharge.[3] (*Id.* at 12). In addition, Mr. Young claimed that his discharge should

---

[2] This summary of facts is taken from Mr. Young's Complaint, Supporting Documents, and Motion for Judgment on the Administrative Record, as well as the Administrative Record. (ECF Nos. 1, 7, 10, 30). As it applies to the United States' Motion to Dismiss, the Court accepts the allegations as true for purposes of this Opinion. *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

[3] Myasthenia gravis is a chronic neuromuscular disease which causes weakness in voluntary muscles including muscles that connect to a person's bones, muscles in the face, throat, and diaphragm. *Myasthenia Gravis*, Nat'l Inst. of Neurological Disorders & Stroke,

be upgraded since he lacked a "pattern of misconduct" and did not receive adequate counseling, rehabilitation, or parental consultation. (*Id.* at 13). However, the BCMR found no evidence of any existing disabilities during his service and found that his behavioral health did not mitigate his discharge since PTSD does not affect one's ethical faculties. (*Id.* at 11, 14). In addition, the BCMR found that his history of insubordination and fighting reflected a pattern of misconduct.[4] (*Id.* at 15).

Mr. Young's Complaint involves three main claims: (1) denial of benefits on September 3, 1981; (2) failure to provide back pay benefits from 1981 through 2025; and (3) wrongful discharge. (Compl. at 1–2). Mr. Young seeks nine million dollars in punitive damages alongside back pay and compensation from 1981 to 2025. (*Id.* at 2). The Court previously dismissed Mr. Young's claims concerning veterans' benefits for lack of jurisdiction. (Partial Dism. Order at 4). However, the Court possesses jurisdiction over Mr. Young's military pay claims to the extent they seek monetary compensation and are outside the claims asserted at the VA. (*Id.* at 5); Military Pay Act, 37 U.S.C. § 204. Consequently, the Court resolves Mr. Young's remaining claims on the administrative record.

## II. Analysis

The parties each move for judgment. (Pl.'s MJAR; Def.'s xMJAR). Military pay claims such as Mr. Young's are resolved on the administrative record. *Walls v. United States*, 582 F.3d 1358, 1367–68 (Fed. Cir. 2009). RCFC 56.1 requires the Court to treat a motion for judgment on the administrative record "in accordance with the rules governing motions for summary judgment, with the exception that any supplementation of the administrative record shall be by stipulation or by court order only." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004) (citations omitted). The Court makes "factual findings from the record evidence as if it were conducting a trial on the record" and "reviews such findings for clear error." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005).

For his part, Mr. Young argues that the Administrative Record supports his underlying claims. (Pl.'s MJAR at 1–2). The United States also moves for judgment, first arguing that Mr. Young's wrongful discharge claim is barred by the Court's six-year statute of limitations. (Def.'s xMJAR at 13). The United States further maintains that the BCMR properly denied Mr. Young disability retirement, and that, because there is no monetary judgment in this case, this failure bars his request for equitable relief. (*Id.* at 14–18). The Court agrees with the United States.

### *A. Wrongful Discharge*

The United States contends that Mr. Young's wrongful discharge claim is barred by the statute of limitations because he filed after the six-year period. (Def.'s xMJAR at 13). The Court

---

https://www.ninds.nih.gov/health-information/disorders/myasthenia-gravis [https://perma.cc/653T-MG9C] (last visited July 19, 2026).

[4] Mr. Young received seven infractions from May through July of 1980 for larceny, sleeping through duty, refusing to clean barracks, fighting, and shoplifting. (AR 107).

agrees, adding that Mr. Young's claim ultimately does not qualify for equitable tolling or accrual suspension.

Under the Tucker Act, the Court has "exclusive jurisdiction to decide specific types of monetary claims against the United States." *Walker v. United States*, 168 Fed. Cl. 171, 175 (2023) (citing *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994); 28 U.S.C. § 1491(a)(1)). It is uncontested that the Military Pay Act is a money-mandating statute and therefore operates in tandem with the Tucker Act to confer jurisdiction over claims plausibly alleging a denial of military pay in violation of the Constitution, a statute, or a regulation. *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004). Importantly, under 28 U.S.C. § 2501, the Court only has jurisdiction over timely filed claims, namely petitions that are brought "within six years after such claim first accrues." A service member's claim for wrongful discharge seeking back pay "accrues at the time of the plaintiff's discharge." *Rana v. United States*, 664 Fed. App'x 943, 947 (2016) (quoting *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003)). The United States argues that Mr. Young's wrongful discharge claim accrued when he was released from active duty and that he was required to file his claim on or before November 20, 1986. (Def.'s xMJAR at 13 (citing 28 U.S.C. § 2501)).

The Court acknowledges that statutes of limitations are not always "amenable to bright-line rules," and may involve equitable considerations beyond strict construction. *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). The Supreme Court has consistently held that equitable tolling is available in some cases when the litigant satisfies two separate elements: (1) diligent pursuit of their rights; and (2) extraordinary circumstances that prevented timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). However, since "the Court's six-year statute of limitations limits the scope of the Government's waiver of sovereign immunity, it is a jurisdictional requirement that cannot be waived and is not susceptible to equitable tolling." *Medder v. United States*, 167 Fed. Cl. 11, 23 (2023) (citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed. Cir. 1988)). When an act provides a different statute of limitation, the Court applies the act's statute of limitation rather than the Court's six-year statute. *Id.* at 25. Nonetheless, such a situation does not apply since the Military Pay Act does not provide a separate statute of limitations. *See* 37 U.S.C. § 204.

In addition to equitable tolling, the doctrine of accrual suspension may delay the statute of limitations. To qualify, the plaintiff "must either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011) (quoting *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008)). The accrual of a claim is then suspended "until the claimant knew or should have known that the claim existed." *Id.* (internal citation omitted). However, the Federal Circuit has explained that a discharge claim begins accrual when the discharge occurred, not when the service member sought relief from a correction board. *Rana*, 664 Fed. App'x at 947. In *Rana*, the service member waited ten years past the statute of limitations' expiration before filing a petition. *Id*. Although the service member had new relevant evidence, the accrual was not suspended since accrual suspension "is 'strictly and narrowly applied.'" *Id.* at 947–48 (quoting *Martinez*, 333 F.3d at 1319). There was no evidence that the military concealed its acts and left the service member unaware of such acts, nor that the wrongfulness of his discharge was inherently unknowable at the accrual date. *Id.* at 948 (citing *Martinez*, 333 F.3d at 1319).

Here, Mr. Young argues that his status as a minor at the time of his discharge and his long-standing PTSD qualify his wrongful discharge claim for accrual suspension, as his age and diagnosis presumably evince that the wrongfulness of his discharge was inherently unknowable.[5] (*See* Pl.'s Resp. at 1–3). However, the Federal Circuit has affirmed that factual circumstances surrounding one's discharge, of which the service member is fully aware, are not unknowable injuries. *Sanders v. United States*, No. 2024-1067, 2025 WL 313171, at *7 (Fed. Cir. Jan. 28, 2025). Since Mr. Young's claims rely on not receiving a discharge medical evaluation and being a minor, facts of which he was aware or advised of and consented to at the time of his discharge, his injuries were not inherently unknowable. (*See* AR 84–86, 88). Furthermore, like in *Rana*, new evidence, such as a PTSD diagnosis, will not justify accrual suspension. Even with the leniency due to Mr. Young, nothing in the record or his arguments triggers a legal doctrine that would suspend the accrual of his claim. *See e.g.*, *Brown Park Ests.-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997) (discussing the continuing claim doctrine as applicable to entirely independent wrongs with separate damages); *Johnson v. United States*, 173 Fed. Cl. 77, 85 (2024) (discussing the half-a-legal-loaf doctrine as applicable where a mandatory military board fails to award full relief owed as a matter of law).

The Court finds that Mr. Young's claims regarding wrongful discharge are not within the Court's jurisdiction. His wrongful discharge claim accrued on the day of his discharge, November 20, 1980. His filing in 2025 is over forty years after 1980, well beyond the six-year statute of limitations. Therefore, this claim must be dismissed.

*B. Disability Retirement*

The United States claims that Mr. Young failed to overcome the presumption that the BCMR acted lawfully since he proffered no evidence of the BCMR's mistakes. (Def.'s xMJAR at 14). The Court concurs. The Court reviews a military board's denial of benefits for whether the conclusion is supported by substantial evidence or is arbitrary and capricious. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). In either standard, there is "a strong presumption that military officials, including those sitting on [correction boards], have acted in accordance with the law." *Cameron v. United States*, 106 Fed. Cl. 551, 560–61 (2012). The Court may not substitute its own judgment where reasonable minds could differ. *Heisig*, 719 F.2d at 1156.

The "arbitrary and capricious standard 'does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence.'" *Meyer v. United States*, 179 Fed. Cl. 497, 503 (2026) (quoting *Heisig*, 719 F.2d at 1156) (emphasis in original). A board's decision is arbitrary and capricious if the board "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State*

[5] Mr. Young makes no argument claiming the government concealed acts of which he was unaware. Thus, only the unknowable injury qualification is analyzed as there are no facts to liberally construe pertaining to the government's potential concealment.

*Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). When determining whether the conclusion has been supported by substantial evidence, the Court considers all evidence "whether or not it supports the challenged conclusion." *Heisig*, 719 F.2d at 1157. Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Here, the BCMR's denial of disability retirement pay was justified. For Mr. Young to receive disability retirement pay despite his discharge under Other Than Honorable conditions, Mr. Young must demonstrate that his "disability was the cause or substantial contributing cause of the misconduct." (AR 12 (citing U.S. Dep't of Army, Reg. 635-40, Physical Evaluation for Retention, Retirement, or Separation, para. 1-2e (Feb. 25, 1975))). To start, the BCMR considered Mr. Young's VA disability rating. (*See* AR 7). It acknowledged the sufficient evidence demonstrating Mr. Young suffered from behavioral health conditions during his service but noted how the VA rating alone is not indicative of a referral for disability benefits nor of a failure to meet Army retention standards at the time of service because VA examinations utilize different standards. (*Id.* at 13–14). Even if Mr. Young had undiagnosed PTSD during his service, such a diagnosis is not "automatically unfitting" under the Army's fitness standards and would not have resulted in medical separation. (*Id.* at 15). In considering whether Mr. Young's PTSD mitigates his discharge, the BCMR found that PTSD is not linked to committing theft and does not impact one's ability to discern right actions from wrong and act in accordance.[6] (*Id.*).

Mr. Young also claims that his pre-service childhood meningitis mitigates his discharge due to potential brain damage. (*See* AR 13). While not explicitly addressed in the final report, the record reflects that the BCMR reviewed Mr. Young's childhood medical records and various meningitis information sheets. (*Id.* at 7). The BCMR's failure to discuss each of Mr. Young's medical issues does not alone imply that the BCMR did not consider each of the medical issues. *See Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017) ("failure to explicitly discuss every issue or every piece of evidence does not alone establish that the tribunal did not consider it"). Rather, the BCMR relied upon the supporting documents and advice of its behavioral health advisor to find that Mr. Young was in an adequate medical condition during his enlistment and his conditions did not mitigate his discharge. (AR 15); *see also Jeanpierre v. United States*, 176 Fed. Cl. 11, 31–32 (2025) (explaining that a military board liberally construes

---

[6] Discharge review boards are required to apply a lenient standard of review to veterans seeking discharge upgrades when their claims involve mental health issues, including PTSD. Memorandum from Anthony M. Kurta to Secretaries of the Military Departments, *Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment* (Aug. 25, 2017). Additionally, if there is a reasonable possibility that the applicant's PTSD existed during service, the board is obligated to generously view that condition as a mitigating or excusing factor for the character of the discharge. Kurta Memorandum ¶ 16; 10 U.S.C. § 1553(d)(3) (requiring same). In considering mitigation or modification of discharge due to PTSD through the Kurta Questions, the BCMR fulfilled its requirement. (*See* AR 14); 10 U.S.C. § 1552(g)(2). Explicitly answering the Kurta questions is evidence that the BCMR sufficiently engaged with Mr. Young's discharge mitigating claims. *See White v. United States*, 179 Fed. Cl. 609, 627 (2026).

a servicemember's mental condition when it discusses the reasons for weighing evidence differently and looks at medical records).

Mr. Young provided no "post-service achievements, character references, or evidence of rehabilitation to support a change in the character of his discharge." (AR 16). As such, the BCMR relied on the evidence from counseling records, Mr. Young's conviction, and his pattern of misconduct—including insubordination, fighting, and poor performance—to uphold his discharge. (*See id.*). The BCMR considered the VA evidence favoring Mr. Young but had substantial evidence to conclude that Mr. Young's conditions could not mitigate his discharge and qualify for disability retirement due to medical advice, the effect of PTSD, and history of misconduct. The administrative record reflects that the BCMR evaluated all significant evidence and incorporated those considerations into its reasoned decision. Thus, the BCMR's decision was not arbitrary or capricious, as it evaluated all relevant factors and articulated a rationale grounded in evidence. Mr. Young has not met his burden to overcome the presumption that the BCMR lawfully conducted its review.

*C. Equitable Relief and Remaining Claims*

The Court lacks jurisdiction over Mr. Young's remaining claims. As the United States notes, the Court cannot hear claims unaccompanied by a money-mandating claim nor those based in tort. (Def.'s xMJAR at 16–18 (citing *Brown v. United States*, 3 Cl. Ct. 31, 47 (1983), *aff'd*, 741 F.2d 1374 (Fed. Cir. 1984); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008))). Mr. Young's claims regarding due process and reinstatement fall within those categories.

The Tucker Act grants this Court jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) seeking a refund for a payment made to the government; and (3) arising from federal constitutional, statutory, or regulatory law mandating payment of money damages by the government. 28 U.S.C. § 1491(a)(1); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). The Court may provide equitable relief only if it first has a proper basis to enter a money judgment. *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) ("It is true that limited equitable relief sometimes is available in Tucker Act suits," but only when it is "an incident of and collateral" to "a money judgment."); *see Bobula v. U.S. Dep't of Just.*, 970 F.2d 854, 859 (Fed. Cir. 1992). Accordingly, once the money-mandating basis for jurisdiction fails, the Court cannot reach Mr. Young's remaining claims. Since Mr. Young's wrongful discharge claim fails, there is no underlying money-mandating claim allowing the Court to hear the claims for equitable relief.

The Court next considers whether any other claims in the Complaint independently fall within its jurisdiction. The remaining claims, identified only through a lenient interpretation of the Complaint, are likewise outside the Court's jurisdiction. Claims seeking correction of military records fall outside the Court of Federal Claims' Tucker Act jurisdiction unless they are tied to, and subordinate to, a separate money-mandating claim. *Visconi v. United States*, 108 Fed. Cl. 344, 350 (2012) (citations omitted). Mr. Young argues that the Army mislabeled his discharge as being under "Conviction by Civil Court" even though he was not imprisoned for over six months as Army Regulation 635-200 (Separation for Misconduct – Conviction by Civil

Court), Chapter 14, Paragraph (a)(2) requires. (*See* Pl.'s MJAR at 2). Such a claim does not mandate compensation and cannot be heard by the Court.[7]

Further, the Court may hear constitutional due process claims only if they support a claim for monetary relief. *Holley v. United States*, 124 F.3d 1462, 1467 (Fed. Cir. 1997). Mr. Young's claim alleging a violation of due process in connection with his discharge as a minor, assuming Mr. Young was stigmatized by his discharge, ultimately fails because he received notice and opportunity of his rights and charges.[8] (AR 89–90). There is no indication of additional statutory procedures for discharging a minor. *See* 10 U.S.C. §§ 1184, 1185. The Army fulfilled its discharge rehabilitation requirements under Army Regulation 635-200 (Personnel Separations – Enlisted Personnel), chapter 14 by giving Mr. Young nine separate counseling sessions in response to his infractions. (*See* AR 9). Further, the Court cannot hear claims alleging the "defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties," nor claims where the "essence of the claim lies in tort." *Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998). Mr. Young's Complaint and supporting materials frame reinstatement as sounding in tort, as they allege discrimination or bias stemming from undue weight placed on his misdemeanor conviction. (*See* Compl. at 2; Pl.'s Resp. at 5). Finally, the Court cannot grant punitive damages. *Jackson v. United States*, 664 F. App'x 922, 925 (Fed. Cir. 2016).

## III. Conclusion

In sum, Mr. Young's wrongful discharge claim is untimely, his request for disability retirement is unsupported by the administrative record, and his remaining claims—whether framed as constitutional, equitable, or tort-based—cannot be entertained absent a viable money-mandating foundation. The BCMR acted within its lawful discretion, applied the correct standards, and reached conclusions supported by substantial evidence. Because no claim before

[7] Even if mislabeled, the mislabeling and the BCMR's treatment of the discharge under that label would constitute harmless errors. Various incidents during Mr. Young's service justify the discharge and the BCMR's denial. (*See* AR 14). Notwithstanding any labeling error, Mr. Young likely would have been discharged under a general separation for misconduct in any event, as his superiors documented deficient conduct and a sustained pattern of infractions. (*See id.* at 235–38, 252–60). Either justification would designate Mr. Young's discharge as under "Other Than Honorable" and bar him from receiving disability retirement pay. *See* Army Regulation 635-200 (Characterization of service or description of separation), Chapter 14; *Christian v. United States*, 337 F.3d 1338, 1343-44 (Fed. Cir. 2003) ("An officer cannot prevail in a challenge to a discharge . . . if the government can demonstrate that, notwithstanding the error" the officer still would have faced the contested outcome.).

[8] Additionally, servicemembers separated under Other Than Honorable Conditions are not entitled to a separation physical. *See Horton v. United States*, No. 24-562, 2025 WL 1522083, at *10 (Fed. Cl. May 28, 2025). Nonetheless, errors in a physical would not have stopped the discharge process, meaning no stigmatization is suffered on that basis. *Id.* (citing *Exnicios v. United States*, 140 Fed. Cl. 339, 374 (2018)).

the Court satisfies the jurisdictional or substantive requirements necessary for relief, Mr. Young's Complaint must be dismissed in its entirety.

For the stated reasons, the Court **GRANTS** the United States' Motion for Judgment on the Administrative Record, (Def.'s xMJAR, ECF No. 32) and **DENIES** Mr. Young's Motion for Judgment on the Administrative Record, (Pl.'s MJAR, ECF No. 31). The Clerk **SHALL** enter judgment accordingly. The Clerk is directed to **REJECT** any future submissions in this case unless they comply with this Court's rules regarding post-dismissal submissions.[9]

**IT IS SO ORDERED.**

David A. Tapp
DAVID A. TAPP, Judge

[9] This provision does not act as an anti-filing injunction or a sanction. *Allen v. United States*, 88 F.4th 983, 989 (Fed. Cir. 2023) (holding that courts must provide pro se plaintiffs with notice and opportunity to be heard before issuing an anti-filing injunction). Plaintiff is not enjoined from proper post-dismissal filings in this case, nor is Plaintiff required to seek leave before filing future actions in this Court. *See id.* This provision is a mechanism to reject non-compliant filings in the above-captioned action once it is dismissed.